**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MARKUS J. HOLLINGSWORTH,    )
                  **Plaintiff**    )        **Civil Action No. 16-274 Erie**
                           )
      **v.**               )        **District Judge Susan Paradise Baxter**
                           )
WM. T. SPAEDER CO., INC.,    )
               **Defendant.**    )


**MEMORANDUM OPINION**


**I.**     **INTRODUCTION**

    **A.**     **Relevant Procedural History**

    Plaintiff Markus J. Hollingsworth, an African American, instituted this civil action on November 14, 2016, against Defendant Wm. T. Spaeder Co., Inc., asserting two counts of alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"): (1) a claim of unlawful discrimination on the basis of race; and (2) a claim of retaliation for complaints of racial harassment and discrimination. [ECF No. 1]. In particular, Plaintiff's claims stem from three separate adverse employment actions: (1) Defendant's decision to transfer Plaintiff from one jobsite to another on December 5, 2015, with an attendant pay decrease; (2) Defendant's decision to lay off Plaintiff on December 18, 2015; and (3) Defendant's decision to cancel a job posting that Plaintiff had been assigned to fill on January 18, 2016.

    Defendants filed an answer to Plaintiff's complaint on January 11, 2017 [ECF No. 11], and the parties subsequently completed discovery. Now pending before the Court is Defendant's

motion for summary judgment [ECF No. 30]. Plaintiff has filed a brief in opposition to Defendant's motion [ECF No. 36], and Defendant has filed a reply memorandum in support of its motion. This matter is now ripe for consideration.

**B.** **Relevant Factual History**[1]

**1.** **Background**

Plaintiff is a member of UA Steamfitters Local 449 ("Union"). In 2015 and 2016, Plaintiff was an Apprentice 4 Steamfitter. (ECF No. 38, at ¶ 1; ECF No. 39, at ¶ 40). Of the thirty members of his class in the Union, and the one hundred twenty members in the four classes below him, Plaintiff was the only African American. (ECF No. 38, at ¶ 3).

Defendant is a mechanical contractor and a member of the Mechanical Contractors Association of Western Pennsylvania, which is party to a collective bargaining agreement ("CBA") with the Union. (ECF No. 39, at ¶¶ 41-42). Contractors in need of steamfitters are required to hire employees through the Union in accordance with the CBA (Id. at ¶ 43).

The Union has an established process through which Union members seek and receive employment. (ECF No. 39, at ¶ 46). Whenever a mechanical contractor needs employees it submits a manpower request to one of the Union's business agents, providing the specific need, job location, and hour requirement. (Id. at ¶ 47). All available jobs are posted on a telephone job line system, which provides a message explaining the several manpower requests for that day. If a Union member wants a particular job posted on the job line, he or she leaves a message with

---

1

The factual history set forth herein has been gleaned from Plaintiff's consolidated statement of facts [ECF No. 38], and Defendant's response to Plaintiff's consolidated statement of material facts [ECF No. 39], to the extent the facts

his or her name. (Id. at ¶ 49). The business agent then makes a list of all Union members vying for a particular job in accordance with the date they last worked, with workers having been laid off the longest placed at the top of the list. (Id. at ¶ 50).

Plaintiff worked for Defendant, off and on, from March 9, 2014, to March 8, 2016. (ECF No. 39, at ¶ 55; ECF No. 42, at ¶ 55). On or about March 3, 2015, Plaintiff filed a discrimination charge against the Union, unrelated to the present matter. (ECF No. 38, at ¶ 4).

### 2. December 5, 2015 Transfer

On or about November 22. 2015, Plaintiff was hired by Defendant and assigned to its job site in Warren, Pennsylvania, at the United Refining Company to perform pipefitting duties consistent with his Apprentice 4 level of training and experience, and was paid at the industrial rate of $32.44 per hour. (ECF No. 38, at ¶ 7). Defendant's President at the time, Terry Spaeder ("Spaeder"), was the project manager for the United Refining job, and Randy Potter ("Potter"), a white male employee of Defendant, was the foreman working on the particular job to which Plaintiff was assigned. (ECF No. 39, at ¶¶ 60, 66).

At the United Refining jobsite, Plaintiff and Potter engaged in an argument on December 4, 2015, which, according to Plaintiff, arose from Potter's continued treatment of Plaintiff in a demeaning and disrespectful way. (ECF No. 38, at ¶¶ 8-9). Within thirty minutes or so of this argument, Plaintiff was informed that he was being transferred from the United Refining jobsite to Defendant's East 18th Street fabrication shop in Erie, Pennsylvania ("Erie shop"), which transfer occurred on December 5, 2015. (Id. at ¶ 10; ECF No. 39, at ¶ 59). The decision to

set forth in each are unopposed and/or amply supported by the evidence of record.

transfer Plaintiff was made by Spaeder, without any input from Potter. (ECF No. 39, at ¶ 66).

Upon his arrival at the Erie shop, Plaintiff was told by Paul Case ("Case"), Defendant's general foreman, and Chris Flint ("Flint"), another foreman, that nobody wanted him there, which Plaintiff interpreted as a comment related to his race. (ECF NO. 38, at ¶ 14). In addition, Case laughed at and verbally ridiculed Plaintiff in the presence of other employees on the shop floor, and uncharacteristically used profanity toward him. (Id., at ¶ 15). While at the Erie shop Plaintiff was given menial tasks to perform, which were significantly different and less responsible than the duties he had previously performed, and he received the shop rate of $28.20 per hour. (ECF No. 38, at ¶¶ 10-11).

### 4.     December 18, 2015 Layoff

Plaintiff continued to work at the Erie shop until December 18, 2015, when he was laid off. (Id., at ¶ 16). Defendant laid off a total of fifteen employees in the month of December 2015, including six other members of the Union, four of whom were working at the Erie shop: two journeymen and two Apprentice 4's. (ECF No. 39, at ¶¶ 71, 74-75). At the time, Plaintiff was the only African American employee working at the Erie shop. (ECF No. 38, at ¶ 17).

### 5.     January 18, 2016 Job Cancellation

On January 18, 2016, Defendant, through its project manager, David Ross ("Ross"), made two manpower requests to the Union for workers at the United Refining jobsite. The first request sought three journeymen and one apprentice and the second sought one journeyman and one apprentice. (ECF No. 39, at ¶ 76). That same day, Plaintiff called the Union job line and learned of the job available on the United Refining project, for which he was qualified; so, he had his

name placed on the Union job list. (ECF No. 38, at ¶¶ 20-21).

Later, on January 18, 2016, Plaintiff received a call from Lenny Miller ("Miller"), the Union's business agent, who told him to report to work for Defendant at the United Refining jobsite. (Id. at ¶ 22). That same afternoon, Ross was informed that Plaintiff had been assigned to work at the United Refining project, and at 3:34 p.m., sent an email to Spaeder and two of the foremen at the United Refining project informing them that Plaintiff had been assigned to the jobsite. (Id. at ¶ 25). At approximately 4:22 p.m. that afternoon, Ross called Miller and cancelled both manpower requests for an apprentice. (Id. at ¶ 26; ECF No. 39, at ¶ 76). Plaintiff was then informed by Miller that he was not to report to the United Refining jobsite. (ECF No. 38, at ¶ 27).

On January 22, 2016, Ross submitted another manpower request to the Union seeking two journeymen for the United Refining project. When no journeymen indicated a desire to fill the positions, the Union's business agent asked Ross whether Defendant would accept an apprentice to fill the manpower request. (ECF No. 39, at ¶ 79). Defendant agreed and the Union assigned Brandon Beck ("Beck"), a white male apprentice, to fill the position, beginning January 25, 2016. (Id. at ¶¶ 30, 80; ECF No. 38, at ¶¶ 29-30).

Plaintiff was ultimately rehired by Defendant on February 3, 2016, through the efforts of a Union business agent, rather than the Union job line. (Id. at ¶¶ 35-36). Plaintiff was assigned to a position cleaning fittings and other simple tasks, and was paid the shop rate of $28.88 per hour. (Id. at ¶ 37). Plaintiff was laid off from this position on March 8, 2016. (Id. at ¶ 37).

## II.   DISCUSSION

### A.   Race Discrimination

Plaintiff alleges that Defendant subjected him to disparate treatment and ongoing harassment on the basis of his race in violation of both Title VII and Section 1981.

The Third Circuit has held that the legal standard applicable to a Section 1981 case is identical to the standard in a Title VII case. Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009) ("[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII"); Anderson v. Wachovia Mort. Corp., 621 F.3d 261, 270 (3d Cir. 2010) ("In the absence of direct evidence of discrimination," the familiar burden-shifting framework applicable to Title VII cases applies). Thus, Plaintiff's race discrimination claims will be uniformly analyzed under the standards applicable to a Title VII case.

Title VII cases are examined according to the burden-shifting framework that was first established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Within this framework, Plaintiff must first establish a *prima facie* case of discrimination by proving the following four basic facts: (i) he is a member of a protected class; (ii) he was qualified for the position in question; (iii) he suffered an adverse employment action; and (iv) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008), citing McDonnell Douglas, 411 U.S. at 802. Proof of these basic facts raises an inference of discrimination, which is given the force and effect of a rebuttable presumption. Texas

Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).

Once a prima facie case is established, the employer must then articulate a legitimate, non-discriminatory reason for the adverse employment action it took against the plaintiff. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000). The employer need not persuade the court that it was actually motivated by the proffered reasons, but needs only to raise a factual issue as to whether it discriminated against the plaintiff. This burden is satisfied if the employer "simply 'explains what [it] has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'" Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25, n.2 (1978). Thus, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Burdine, 450 U.S. at 257.

Once the employer has met its relatively light burden of articulating a legitimate reason for the adverse employment decision, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's proffered explanation is pretextual. Id. Plaintiff may meet this burden either directly, by persuading the court that the employer's action was more likely motivated by a discriminatory reason, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. See McDonnell Douglas, 411 U.S. at 804-805.

Throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff. See Burdine, 450 U.S. at 253-256. Plaintiff may meet this burden if her "prima facie case, combined with sufficient evidence to find that the

employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

For ease of discussion, the Court will address Plaintiff's race discrimination claim in the context of each of the three challenged employment decisions, in the same order as presented in Defendant's motion for summary judgment.

### 1. January 18, 2016 Job Cancellation

Defendant contends that Plaintiff's claim arising from the cancellation of the January 18, 2016, job request fails to establish an adverse employment action taken by Defendant, because Defendant "had no role or involvement in deciding whether to hire Plaintiff." (ECF No. 31, Defendant's Brief, at p. 8). In particular, Defendant asserts that it "cancelled the worker request without even knowing Plaintiff accepted the job." (Id. at p. 9). However, this statement is contradicted by the undisputed facts of record. In particular, the parties have agreed that Ross was informed that Plaintiff had been assigned to fill the January 18, 2016 job request, that Ross then proceeded to inform Spaeder and two foremen at the site of Plaintiff's assignment, and that the job request was canceled less than an hour later. (ECF No. 38, at ¶¶ 25-26; ECF No. 39, at ¶¶ 25-26). Thus, it is beyond comprehension that Defendant would argue it had no knowledge of Plaintiff's assignment before canceling the job request.

Defendant contends further that Plaintiff has failed to show that "similarly situated persons outside of the protected class were treated more favorably or the adverse job action

occurred under circumstances giving rise to an inference of discrimination." (ECF No. 41, Defendant's Reply Brief, at p. 5, <u>citing</u> <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d 403, 410-11 (3d Cir. 1999)). In this regard, Defendant asserts that Plaintiff was treated identically to Beck, a white male, "who was the other apprentice who would have worked for [Defendant] following the January 18 request" and, thus, was equally affected by the cancellation of the job request; however, Defendant fails to cite to any evidence of record indicating that Beck was, in fact, assigned to work for Defendant in response to the January 18, 2016 job request. Instead, the record reflects only that Plaintiff was assigned to work in response to the request, thus relegating Defendant's assertion to mere conjecture.

Additionally, Defendant notes that Beck's subsequent assignment in response to Defendant's follow-up job request of January 22, 2016, was done at the behest of the Union, without any input from Defendant. As a result, Defendant argues that Plaintiff is unable to establish any inference of discriminatory animus on its part related to the cancellation of the January 18, 2016 job request, because any ensuing favorable treatment shown to Beck cannot be attributed to Defendant. However, even assuming Defendant played no part in the decision to hire Beck in response to its January 22, 2016 job request, this fact does not preclude Plaintiff from showing that the cancellation of the January 18, 2016 job request "occurred under circumstances that could give rise to an inference of intentional discrimination." <u>Chertoff</u>, 541 at 214, <u>citing</u> <u>McDonnell Douglas</u>, 411 U.S. at 802.

For the foregoing reasons, Defendant's motion for summary judgment as to that portion of Plaintiff's race discrimination claim attributable to Defendant's decision to cancel the January

18, 2016, job request will be denied.

## 2.     December 5, 2015 Transfer

Defendant argues that Plaintiff cannot establish the fourth element of his *prima facie* case regarding Defendant's decision to transfer him from the United Refining project to the Erie shop on December 5, 2015, because he cannot establish that similarly situated persons outside of Plaintiff's protected class were treated more favorably or that his transfer occurred under circumstances giving rise to an inference of discrimination. In particular, Defendant notes that, "while Plaintiff was the only employee transferred to [Defendant's] facility on that date, it is undisputed that other Union members were working there at the time, including two other Apprentice 4s … both of whom are outside the protected class." (ECF No. 31, at p. 10). This argument misses the point.

Plaintiff is not alleging that he was the only Union member or Apprentice 4 working at the Erie shop. He alleges that he was subject to disparate treatment when he was transferred from the United Refining jobsite to the Erie shop after engaging in an argument with Potter, a white employee, thereby suffering a demotion and pay cut, while Potter did not receive the same treatment. The fact that other non-African American Union members and Apprentice 4s were working at the Erie shop at the time, without evidence that they received similar treatment as that alleged by Plaintiff, does nothing to defeat Plaintiff's ability to establish the fourth element of his *prima facie* case.

Defendant next argues that, even if Plaintiff can establish a *prima facie* case of race discrimination, Defendant had a legitimate, non-discriminatory reason for the transfer. In this

10

regard, Defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Burdine, 450 U.S. at 257. Here, Defendant contends that Nooter Construction ("Nooter"), the general contractor for the United Refining project, requested that Plaintiff be removed from the site for an unsafe act he allegedly committed on a boom lift. (ECF No. 31, at p. 10; ECF No. 39, at ¶ 62). According to Defendant, this request led to Spaeder's decision to transfer Plaintiff to the Erie shop.

Plaintiff disputes that Defendant's proffered reason is supported by admissible evidence, noting that Defendant has merely offered "the self-supporting affidavit of its own then-President, Terry Spaeder, which, in turn, relies upon the double-hearsay statement of an unidentified bad act allegedly committed by [Plaintiff]." (ECF No. 36, Plaintiff's Memorandum, at p. 16). Moreover, Plaintiff asserts that "there is at least sufficient evidence to show the pretextual nature" of Defendant's proffered reason, even if Defendant is found to have met its "relatively light" burden of articulating a legitimate reason. (Id.). The Court agrees.

The sole evidence of record supporting Defendant's proffered reason is Spaeder's affidavit declaring that he was told by Lance Greer ("Greer"), Defendant's general foreman for the United Refining project, that an unnamed safety representative from Nooter informed him of Plaintiff's "unsafe act" and asked that Plaintiff be removed from the site. (ECF No. 39, at ¶ 62). Plaintiff notes that "[n]either Greer nor the unidentified 'safety representative' ha[s] offered [his] own affidavit or other admissible evidence of what was said or what 'unsafe act' purportedly resulted in the request for the transfer." (ECF No. 36, at p. 17). Plaintiff notes further that the

record is devoid of any evidence of him receiving a warning, incident report, or any form of discipline for engaging in an alleged "unsafe act" at the United Refining jobsite that allegedly precipitated his transfer. By exposing this absence of record evidence, Plaintiff has indirectly met his burden of showing that Defendant's "proffered explanation is unworthy of credence," McDonnell Douglas, 411 U.S. at 804-805, such that a trier of fact may conclude that Defendant unlawfully discriminated. As a result, Defendant's motion for summary judgment as to that portion of Plaintiff's race discrimination claim attributable to Defendant's decision to transfer him on December 5, 2015, will be denied.

### 3. December 18, 2015 Layoff

Plaintiff claims that Defendant's decision to lay him off on December 18, 2015, was tied to its previous decision to transfer him to the Erie shop on December 5, 2015, and was, thus, racially motivated. Defendant responds that its decision to lay Plaintiff off on December 18, 2015, was part of a larger reduction in its workforce that occurred due to a lack of work during the month of December, in which a total of 15 other employees were laid off, including four Union members who were working at the Erie Shop, two of whom were Apprentice 4's outside of Plaintiff's protected class. (ECF No. 31, at pp. 13-14; ECF No. 39, at ¶ 71-75). Although Plaintiff disputes that his lay off occurred as part of a larger reduction in force, he provides no evidence to overcome the fact that a reduction in force actually took place at or around the time of his layoff. As a result, the Court accepts Defendant's construction of Plaintiff's claim in this regard as a reduction in force claim.

In the context of a reduction in force claim, Defendant is correct in asserting that Plaintiff

must show that Defendant retained a similarly situated employee (a "comparator") outside of Plaintiff's protected class, in order to satisfy the fourth element of his *prima facie* case of race discrimination. See In re Carnegie Ctr. Assocs., 129 F.3d 290, 294-95 (3d Cir. 1997); Brown v. Boeing Co., 468 F.Supp.2d 729, 734 (E.D.Pa. 2007). This he has failed to do.

"In order to determine who might qualify as a similarly situated employee we must look to the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace." Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 305 (3d Cir.2004). The only "comparator" cited by Plaintiff in relation to his December 18, 2015, layoff is Potter, the white male employee with whom he had the argument at the United Refining jobsite that allegedly precipitated his transfer to the Erie shop on December 5, 2015. (ECF No. 36, at p. 21). However, at the time, Plaintiff was a fourth-year apprentice, while Potter was a foreman who supervised employees such as Plaintiff. Thus, Potter was not similarly situated, either in job function or supervisory responsibility.

As Defendant points out, the only true comparators would be other fourth-year apprentices like Plaintiff. In this regard, the record reflects that two other Apprentice 4's outside of Plaintiff's protected class were also laid off from the Erie shop during the December 2015 reduction in force. Consequently, Plaintiff is unable to satisfy the forth element of his *prima facie* case of race discrimination arising from his layoff on December 18, 2015. Summary judgment will be granted Defendant as to this portion of Plaintiff's race discrimination claim.

**B.** **Retaliation**

Plaintiff claims that all of Defendant's adverse employment decisions were made in

retaliation for his filing of a discrimination charge against the Union on March 3, 2015.

To establish a *prima facie* case of retaliation under either Title VII or § 1981, a plaintiff must show that: (1) he engaged in activity protected by Title VII or § 1981 to the extent such a claim is attempted; (2) the employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse employment action. Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010) (§1981); Davis v. City of Newark, 285 F. App'x 899, 904 (3d Cir. 2008) (Title VII) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir.1995)); see CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008) (section 1981 likewise bans retaliation against individuals who oppose discrimination). Here, Defendant argues that Plaintiff cannot satisfy the third element of his *prima facie* case because he has failed to establish a causal connection between any of the alleged adverse employment actions and Plaintiff's protected activity.

Defendant contends that "'A plaintiff asserting a claim of retaliation has a higher causal burden than a plaintiff asserting a claim of direct status-based discrimination under Title VII.'" Carvallo-Grevious v. Del State Univ., 851 F.3d 249, 257-58 (3d Cir. 2017). Specifically, Defendant maintains that Plaintiff must show "'by a preponderance of the evidence that there is a 'but-for' causal connection' between the adverse employment action and retaliatory animus.'" Id. at 258, citing Miller v. CIGNA Corp., 47 F.3d 586, 595-96 (3d Cir. 1995) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). However, the Third Circuit makes clear that this standard applies solely to Plaintiff's ultimate burden of proving retaliation.

At the *prima facie* stage, Plaintiff need only "produce evidence 'sufficient to raise the

inference that [his] protected activity was the *likely reason* for the adverse [employment] action.'" <u>Carvallo-Grevious</u>, 851 F.3d at 259, <u>quoting</u> <u>Kachmar v. SunGard Data</u> <u>Systems, Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997) (emphasis added) (internal quotation marks omitted). Where a challenge to the sufficiency of a plaintiff's evidence has been made as to causation at the *prima facie* stage, two central factors generally are brought into play: (1) the "temporal proximity" between the protected activity and the alleged retaliation and (2) the existence of any "pattern of antagonism in the intervening period." <u>Jensen v. Potter</u>, 435 F.3d 444, 450 (3d Cir. 2006), <u>quoting</u> <u>Abramson v. William Paterson Coll. of New Jersey</u>, 260 F.3d 265, 288 (3d Cir.2001) and <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920–21 (3d Cir.1997)). "Timing alone raises the requisite inference when it is 'unusually suggestive of retaliatory motive.'" <u>Id.</u>, <u>quoting</u> <u>Krouse v.</u> <u>American Sterilizer Co.</u>, 126 F.3d 494, 503–04 (3d Cir.1997)).

Here, Defendant contends, *inter alia*, that the temporal proximity of eight months or more between the charge and the adverse employment actions is too attenuated to establish a causal connection. (ECF No. 41, Defendant's Reply Brief, at p. 4). In this regard, the Third Circuit Court has recognized that, "… even if 'temporal proximity ... is missing, [it is appropriate to] look to the intervening period for other evidence of retaliatory animus." <u>Id.</u> This is because the motivation of any individual is a question of fact, the resolution of which cannot be reduced to an application of one particular formula or another. <u>Farrell v.</u> <u>Planters Lifesavers Co.</u>, 206 F.3d 271, 286 (3d Cir.2000); <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 346 (3d Cir.2006). Thus, where the issue of the legal sufficiency of the evidence on causation has been raised, it is important to consider all of the proffered evidence as a whole to determine whether it "may suffice to raise the

inference." Jensen, 435 F.3d at 450, quoting Farrell, 206 F.3d at 280 (citation omitted).

Here, Plaintiff has supplied his own affidavit, in which he provides evidence of retaliatory animus exhibited by Defendant's employees during the intervening period between the filing of his charge and Defendant's adverse employment decisions [ECF No. 37-1]. In particular, Plaintiff declares that immediately after he filed the discrimination charge against the Union in March 2015, it became widely known among Defendant's employees that the charge had been filed and, as a result, he was harassed and treated differently. (Id, at ¶ 8). Plaintiff declares that some of Defendant's employees, including two of Plaintiff's supervisors, began avoiding him, stopped giving him "the usual information about various job tasks, and did not even want to allow [him] access to the necessary job materials from the fabrication shop." (Id. at ¶ 9). In addition, comments were made to him about his "Obama phone," and profanity was used when speaking to him. (Id. at ¶ 10). In addition, after he was transferred to the Erie shop on December 5, 2015, Plaintiff was told by two of Defendant's foremen that nobody wanted him there, ostensibly due to his race, and he was laughed at, ridiculed, and subjected to profanity. (Id. at ¶¶ 17-18).

While far from conclusive, the averments set forth in Plaintiff's affidavit suggest the existence of a "pattern of antagonism in the intervening period" between Plaintiff's filing of the discrimination charge in March 2015, and the adverse employment decisions in December 2015, sufficient to "raise the inference that [Plaintiff's] protected activity was the likely reason for the adverse action[s]." Carvallo-Grevious, 851 F.3d at 259. Such averments are enough to establish causation at the *prima facie* stage, despite Defendant's insistence that its decision-makers were

unaware of the charge at the time each adverse decision was made. That being said, the Court finds that the inference raised from the alleged "pattern of antagonism" does not extend to Defendant's cancellation of its January 18, 2016 job request, as the causal connection has not been adequately substantiated and appears speculative, at best. Accordingly, Defendant will be granted summary judgment as to that portion of Plaintiff's retaliation claim related to the cancellation of the January 18, 2016, job request.

Since Plaintiff has adequately stated a *prima facie* case of retaliation as to the adverse employment actions in December 2015, Defendant has the burden of presenting a legitimate, non-retaliatory reason for having taken each adverse action. Daniels v. School Dist. of Philadelphia, 776 F.3d 181, 193 (3d Cir. 2015). Defendant has met this burden by proffering that (i) its transfer of Plaintiff on December 5, 2015, was done at the request of Nooter, the general contractor at the United Refining jobsite, who allegedly accused Plaintiff of committing an "unsafe act;" and (ii) its layoff of Plaintiff on December 18, 2015, was part of a larger reduction in force that occurred during the month of December 2015, due to a lack of work.

The burden, thus, shifts to Plaintiff "to produce evidence showing that the employer's reason for its action was false and retaliation for engaging in the protected activity was the real reason, or "but-for" cause, for its actions." Young v. City of Philadelphia Police Dept., 651 Fed.Appx. 90, 97 (3d Cir. 2016). "In order to show that an employer's stated reason behind an adverse employment action was 'merely a pretext for unlawful retaliation,' a plaintiff may point to 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally

find them unworthy of credence.'" <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 504 (3d Cir.1997) (internal citations and quotations omitted).

As the Court previously found in the context of Plaintiff's race discrimination claim stemming from the December 5, 2015 transfer, Plaintiff has produced sufficient evidence to allow a factfinder to conclude that Defendant's proffered reason for the transfer is unworthy of credence. As a result, Defendant's motion to dismiss that portion of Plaintiff's retaliation claim arising from the December 5, 2015 transfer will be denied.

As for Defendant's decision to lay off Plaintiff on December 18, 2015, Plaintiff has failed to produce sufficient evidence to cast doubt on Defendant's reason for the layoff (i.e., a reduction in force attributable to a lack of work), or to demonstrate that the layoff was, in fact, motivated by retaliatory animus stemming from Plaintiff's filing of the March 2015 discrimination charge. Plaintiff's attempt to make the layoff "part and parcel" of Defendant's prior decision to transfer him on December 5, 2015, is overcome by the uncontradicted record evidence supporting Defendant's explanation of a reduction in force. Consequently, Defendant is entitled to summary judgment as to Plaintiff's retaliation claim insofar as it stems from the December 18, 2015 layoff.

An appropriate Order follows.